IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

```
UNITED STATES OF AMERICA,         )
                                  )
                    Plaintiff,    )
                                  )
       vs.                        )
                                  )
ZOYLA ISOLINA ASENSIO-BOYADZHYAN, )
et al.,                           )
                                  )    No. 3:00cr0079-HRH
                    Defendants.   )
_____)
                                  )
This Order Pertains to:           )
                                  )
WAYNE EVERETTE (D-03)             )
_____)
```

O R D E R

Motion to Reduce Sentence

      Defendant Wayne Everette seeks to have his sentence reduced upon remand to this court by the Ninth Circuit Court of Appeals pursuant to United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005).[1]  The motion is opposed by the Government.[2]  The sole question before the court on remand is:

> Would the sentence imposed upon Everette have been materially different had the court known that the Sentencing Guidelines were advisory as opposed to mandatory?

---

[1]    Clerk's Docket No. 633.

[2]    Clerk's Docket No. 634.

By way of background, Everette went to trial and was convicted of Count 1, conspiracy in relation to cocaine trafficking, 21 U.S.C. § 846, and Count VI, distribution and possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). He was acquitted as to other charges. Everette's drug source and co-defendant, Zoyla Asensio-Boyadzhyan, also went to trial. She was convicted of the same drug conspiracy and related offenses as charged in Counts II through V and VII of a federal court indictment. The court determined that, under the mandatory Sentencing Commission guidelines, Everette's total offense level was 34 and his criminal history category III. The guidelines range for imprisonment was thus 188 to 235 months. The court imposed a sentence of 188 months. Boyadzhyan's total offense level was 36; her criminal history category I. The guidelines range for imprisonment regarding Boyadzhyan was thus 188 to 235 months. The court also imposed a sentence of 188 months as to Boyadzhyan.

On appeal, proceedings in Everette's case were stayed pending the Ninth Circuit's en banc decision in Ameline. Once Ameline was decided, Everette's case was remanded to this court by memorandum decision, reflecting that Everette had contended on appeal that his Sixth Amendment rights had been violated by the district court when it determined the quantity of cocaine involved in Everette's offense and in deciding his role in the offense to be a supervisory one. A remand was granted because Everette had not raised either of these points before the district court. In light

of <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005), it is now entirely clear that it is not a violation of Everette's Sixth Amendment rights for this court to have determined the quantity of drugs involved in his offenses or his role in those offenses. However, the guidelines are now advisory, not mandatory; and, under <u>Ameline</u>, Everette is entitled to have this court determine whether or not it would have sentenced differently had it known that the Sentencing Commission guidelines were advisory rather than mandatory.

Having fully considered all of the arguments of the parties, and having conducted an independent review of the relevant portions of the record of this case, the court concludes that it would not have sentenced Everette any differently had the court known that the Sentencing Commission guidelines were advisory rather than mandatory. The court reaches that conclusion for the following reasons.

<u>Drug Quantity</u>. In briefing the instant motion, defendant focuses considerable attention on the facts underlying the court's finding that applicable guideline "relevant conduct" rules made him responsible for 16 to 18 kilos of cocaine. The primary thrust of Everette's arguments are that the court simply got the facts wrong as opposed to any technical, guideline contention that particular conduct should not have been attributed to him. Therefore, the distinction between advisory and mandatory guidelines has nothing to do with the court's determination of drug quantity. Nevertheless, the court has reexamined the presentence report, its

- 3 -

handwritten notes, and the transcript of Everette's sentencing hearing; and, as a consequence of that review, the court remains satisfied that Everette and the people over whom he had direct supervision carried approximately 16 to 18 kilos of cocaine to Anchorage, Alaska.[3]

<u>Role in the Offense</u>. Everette's probation service report suggested that his role in this offense was that of a manager or supervisor, but not an organizer or leader. Had the court adopted that recommendation, defendant's base offense level would have been increased by three levels. The Government recommended that defendant Everette's role was not so great, and that the adjustment should be two levels. With some misgivings, the court adopted the Government's recommendation. Here also, the court's decision did not involve any guidelines analysis. The question was essentially one of fact: that is, the extent of Everette's role in the criminal conspiracy. The question of whether the guidelines were mandatory or advisory would have had little to do with the making of that fact determination.

---

[3] At sentencing, the court said: "I think there is reason to suspect that there was considerably more [cocaine] than that that Mr. Everette was involved in, but — but it is clear to me that there is good evidence, hard evidence, of his involvement in transactions that — are in the vicinity of 16 to 18 kilos of — of cocaine." Tr. at 13. The court's view of this matter has not changed at all. The evidence was clear that Everette or those whom he supervised transported more than 15 but less than 50 kilos of cocaine to Anchorage. Whether the actual amount was 16, 18, or somewhat more than that (as a fact-finder might have determined) is irrelevant. U.S.S.G. § 2D1.1(c)(3).

<u>Criminal History Category</u>.  Everette argues that the court could and should have evaluated his criminal history category differently had it understood that the guidelines were advisory. The presentence report suggested that Everette's criminal history score was six points for prior offenses, with upward adjustment of two points for being on probation at the time of the offense of conviction and one additional point because the offense of conviction came within a year of Everette's release from imprisonment.  Nine criminal history points gets one a criminal history category of IV.

Unlike matters discussed above, the court's calculation of the defendant's criminal history category involved no fact-finding.  There was no disagreement about Everette's prior record. Rather, at sentencing, Everette argued that criminal history category IV significantly over-represented the seriousness of his criminal history, and the Government agreed with the defendant. Again with some misgivings, the court accepted the parties' view, departed from the guidelines as permitted by U.S.S.G. § 4A1.3(b)(1), and fixed Everette's criminal history category at III, which significantly reduced the imprisonment time to which he was exposed.[4]  It is in this context that Everette now argues that the court would have reduced his criminal history category still more had the court known that the guidelines were advisory.

---

[4] Assuming an offense level 34, a departure from criminal history category IV to category III reduces the minimum of the range for imprisonment from 210 months to 188 months.

In support of that contention, Everette urges that his offenses occurred before his 30th birthday, that he had no prior drug offenses, and that he had no prior felony offenses. In fact, the presentence report indicates that Everette was 31 years old at the time he was sentenced. At that age, Everette was considerably older than the run-of-the-mill drug dealer this court usually sees. At the time of sentencing, this court would not have considered defendant's age to be a non-guideline factor suggesting a sentence different from the otherwise applicable guideline sentence. On the contrary, at over 30 years of age, Everette was considerably past the age of "youthful indiscretions". It is quite true that Everette had no prior drug convictions and no prior felony convictions. Those circumstances did indeed attract the court's attention at sentencing, where the court observed:

> That said, it just simply offends my sense of — of fairness, of justice, to send somebody, who as far as we know from the report in this case has not previously committed a felony offense and has not been convicted of another drug offense to ... a sentence of 235 months.[5]

In consideration of those concerns, the court granted Everette a two-level adjustment of his offense level for acceptance of responsibility. That reduced his total offense level from 36 to 34. The decision to take that action was a dubious one under the guidelines in light of the fact that Everette was extremely tardy in expressing any sort of contrition, and he went to trial!

---

[5] Tr. at 21.

Although the decision to grant Everette a two-level adjustment for acceptance of responsibility based upon a demonstrated acceptance of responsibility for his offense may superficially comport with Guideline 3E1.1(a), the court's decision to so do most certainly ignored the intent of that guideline as expressed by the Sentencing Commission Application Note 2, which makes it very clear that, "[t]his adjustment is not intended to apply to a defendant who puts the Government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt or expresses remorse."  The court will return to this subject a little later in this decision. For now, it will suffice to say that the court took particular note of the fact that Everette had no prior drug or felony convictions and found a way to fit its concerns in that area into the guideline sentence that was imposed.

Co-defendant's Sentence. As set forth in greater detail at the outset, the court imposed the same 188-month sentence upon both Everette and his co-defendant.  Although the co-defendant's offense level was determined to be greater than Everette's, her criminal history category was determined to be I, not III as in Everette's case.  Under the guidelines sentencing table, U.S.S.G. § 5, pt. A, the differences between the two offense levels and between the two criminal history categories as between Everette and his co-defendant exactly off-set one another such that the range of months of imprisonment for each defendant was 188 to 235 months.

The sentencing of Everette and his co-defendant were scheduled for the same time on June 24, 2002. The court took up Everette's sentence first;[6] however, the court had spent considerable time in advance of Everette's sentencing reviewing the presentence reports and sentencing memoranda as to both defendants in advance of the sentence hearing. As a consequence, the court was cognizant of what the guideline sentencing considerations were as to each defendant before Everette was sentenced. This, too, is a subject that does not really implicate the distinction between mandatory and advisory guidelines. The fact that Everette believes that he should have received a sentence less than that of his co-defendant does little or nothing to inform the court regarding why it might have sentenced Everette differently had it then been known that the guidelines were advisory rather than mandatory. We shall return again to this subject also later in this decision.

In the foregoing discussion, the court has undertaken to evaluate Everette's arguments in light of what actually went on at sentencing by resurrecting the court's thoughts about sentencing Everette as it did in June of 2002. The court has seriously endeavored to approach the matter with a "the guidelines are only advisory" mind-set — the court does not have to sentence with reference to the guidelines if the result does not comport with statutory sentencing factors. Having indulged in that exercise, the court concludes that it would not have sentenced Everette any

---

[6]   IOS Tr. at 4.

differently; for the court in fact considered most of what Everette now urges, and addressed those concerns to his advantage in effecting a guideline sentence.

There is arguably another way to look at Everette's contentions. Rather than focusing upon the court's subjective evaluation of what went on at sentencing in the light of Everette's present arguments, the court has tested its own subjective evaluation by considering what some are now referring to for convenience as "variances" from the guidelines or as "non-guidelines sentencing factors," which are set forth in 18 U.S.C. § 3553(a).

The first of those factors is the nature and circumstances of the offense, and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Everette contends that the court got it wrong concerning the nature of his offense — in particular, the quantity of drugs. As already suggested, this disagreement does not implicate guideline considerations. The court has no reason to think that it would have made any different decision about the quantity of drugs attributable to Everette in light of the fact that he was convicted of a drug conspiracy. That conviction made Everette legally responsible for his own drug dealing and that of his co-conspirators. Likewise, this first non-guideline factor brings into play Everette's role in the conspiracy, which was in fact substantial. Everette was not a first offense "mule". Among other functions, he was a recruiter

and trainer of drug couriers. The guidelines as applied to Everette aptly address the nature and circumstances of his offense.

Turning to the defendant characteristics side of this first non-guideline sentencing factor, the court expressly addressed concerns about Everette's prior criminal history. With the Government's concurrence and despite its own misgivings, the court took a view of Everette's prior criminal record that significantly reduced his sentence. Moreover, the court expressly took cognizance of the fact that Everette had no prior felony conviction and no prior drug conviction, and granted an acceptance of responsibility reduction of Everette's offense level. Thus, the court gave personal, particularized attention to Everette's relevant characteristics. The guidelines aptly take account of those characteristics.

The court did not reduce Everette's sentence because of his age. Age is certainly a defendant characteristic that the court may consider as a non-guideline sentencing factor. In Everette's case, however, if there is anything remarkable about Everette's situation, it is that he was first arrested for dealing in controlled substances at age 30. From a non-guideline point of view, defendant's age was an aggravating factor, not an ameliorating one. At age 30, there is no reasonable basis for attempting to pass off one's conduct as a "youthful indiscretion."

Finally, the Section 3553(a) factors include an item (6), which provides that the court consider "the need to avoid unwarranted sentence departures among defendants <u>with similar</u>

- 10 -

<u>records</u> who have been found guilty of similar conduct.  As already discussed, the court was in a position to, and did, consider the relationship between sentences imposed upon Everette and his co-defendant.  As observed already, they got the same sentence. Although the co-defendant's conduct was arguably more culpable (the co-defendant was Everette's source for controlled substances),[7] it is equally true that her criminal record was not at all similar to Everette's.  The co-defendant had no prior criminal record.  Everette, on the other hand, had about a ten-year history of assaults and driving offenses.[8]  Quite apart from guideline considerations, the court perceives no unwarranted disparity between the sentence imposed upon Everette and that imposed upon his co-defendant.  Both were major players in a substantial drug conspiracy.

There are, of course, other Section 3553(a), non-guideline factors that the court considers in establishing a sentence.  Most notably is the second set of factors, which include the generalized goals of promoting respect for law and providing just punishment for offenses (18 U.S.C. § 3553(a)(2)(A)), the need for sentences to afford adequate deterrence of criminal conduct (18 U.S.C. § 3553(a)(2)(B)), and the need to protect the public from further crime (18 U.S.C. § 3553(a)(2)(C)). Reflecting as best

---

[7] It seems equally arguable that without his co-defendant Everette would have engaged in a drug distribution conspiracy with a different source.

[8] Presentence Report, ¶¶ 104 - 113.

the court can at this date on the sentencing of Everette, the court has no reason to think that it would conclude that a 188-month sentence was unreasonably beyond that which was necessary to effect all of the statutory sentencing factors set out in 18 U.S.C. § 3553(a).

## Conclusion

For the foregoing reasons, the court concludes that its sentence of Everette would not have been materially different in this case had the court known that the Sentencing Commission guidelines were advisory rather than mandatory. The motion to reduce sentence is denied.

DATED at Anchorage, Alaska, this <u>6th</u> day of March, 2006.

<u>s/ H. Russel Holland</u>
United States District Judge